This case, while seeming, would you state your appearance? I know we're all friends here, but you want credit on the record or you don't get paid. Yes, Your Honor. Donald Hyde, on behalf of the appellate. Thank you. Mr. Townsend. This case, Your Honor, it really is one that is proof that law both in some ways follows history and guides history. The issues that come up in this case start at the time of the writing of the Constitution with the history fresh in the drafter's minds of why a strong common defense and the ability to raise and maintain and protect armed forces were essential to the survival of the country. It comes forward to recent history. We are considering this application of the statute, whether or not there's federal jurisdiction in this lawsuit, at a time when we've been at war twice on the continent. And then, personally, I found it kind of interesting, as I was flying up here, as I was traveling from Louisiana to assert that a state could be sued on a military matter, which is about as contrary to the history, geographically, as you can imagine. And when I put those together, I thought about this and decided to look at the amendment first in the context. If you look at the 1998 amendment to USERRA, which first must be noted is a statute that has been incrementally developed over time, starting out as a VRRA. It's been amended a couple of times. And the 1998 amendment made a number of changes, but the one change that we care about today is to the jurisdictional provision. The pre-revision portion of always allow a private individual to go to federal court. Whether it was a state defendant or a private defendant, it made no difference. And it was clear of that. The 1998 revision simply asserted, through the change, a three-part jurisdictional provision. Now, what's clear is what it doesn't. It said that a private individual who is pursuing a claim against a state may go to state court. Now, why would they do that at that point in history? As I said, this is a case that, to my mind, at least proves law, but follows and leaves history. Well, when you look at the history from the committee report, for that amendment, what did they have in mind? What was the recent legal history in the development of constitutional law at that time, in the late 90s? Well, they were concerned, at least with regard for USERRA, according to the committee report from the House, about Valisuez and the first half Amadieh decision. They were concerned that due to the jurisdiction going straight to federal court, and there not being clear necessary concurrent jurisdiction, that an individual might or might not have a remedy if it was against the state. Ah-ha, it makes sense. You insert a may with a purpose. That may guaranteed they could go to state court. However, you then look for whether or not that may creates an exclusive grant of jurisdiction to the state court. Now, the three, I submit that, as briefed, you have the may contraposed between two shalls. And although the state of Alaska has raised the interest in America, its apples and oranges due to the grammar of it, actually, all three are jurisdictional provisions. And so I would submit that, logically, they actually are not different. That if Congress wanted to use a restrictive set of language in the provision concerning suits against states, it would have. Well then, how do you apply the clear and unequivocal standard of seminal tribes here? What is clear and unequivocal when there must be a clear intent to abrogate sovereign immunity of a state? Well, I would have to say that I see that through the lens of the later decisions from the Supreme Court, Your Honor, of both Alden and Katz. And the sum total of those, although I believe they started in the bankruptcy arena, was that you can have an implied waiver through two sources, either within the structure of the Constitution, in this instance, Article I powers, as framed by the Constitutional Convention, or through subsequent amendment. Now, it's interesting to note that if you're going to, subsequently in Alden and Katz, allow another Article I power, the bankruptcy power, that leaves Article I, Section 8, if I recall correctly, it would seem that in an area where you have a long recognized need for uniformity, which by the way is, of course, one of the primary reasons that there is a federal bankruptcy law as opposed to state-by-state bankruptcy law, that there is a similar, and if not greater, need for uniformity in the raising and protection of our armed forces. And in fact, the Supreme Court in U.S. v. McIntyre did, in fact, recognize that need for uniformity. So, that's how I would reconcile it with seminal tribes. I would view it through the lens of those two later cases, and I would say that there's ample authority based on those cases, Your Honor, to say that the Article I war-making power, the war power, is sufficient to allow sovereign immunity to be overcome. Additionally, as to whether or not there was any specific intent in the statute to overcome it, I would also commend to the Court's attention 38 U.S.C. 4323d3, which specifically states, and it continues to state post-provision, that the same remedies are available against the states as any other defendant in such a case. Well, let's go to the case you just cited, the Alden case, and I'm assigning from page 730. In exercising its Article I powers, Congress may subject the states to private suits in their own courts only if there is compelling evidence that the states were required to surrender this power to Congress pursuant to constitutional design. About which you've been speaking. And I go back to my question, where is this compelling evidence? The compelling evidence is, in fact, the war powers clause in the Constitution that grants the power to make war to the federal government, to Congress to declare war. What does Congress's power to declare war have to do with this case? It has everything to do with this case. Explain it to me. The power to declare war and the power to raise an army. And if you look at the structure of our military today in the reality... You know, that argument really is carried to its ultimate conclusion. We'll do away with all the Supreme Court cases because what you're saying is, if the Constitution authorizes action by Congress, that means, you know, the 11th Amendment never applies. All you need is the Constitution, but that's not what the cases say. No, I don't... You said all you have to look at is the War Powers Act from the Constitution, but the cases say you've got to look at the legislation to see what Congress specifically says. And I respectfully submit, Your Honor, that I have, in fact, pointed to portions of the legislation that are talking about what Congress said, as well as the committee report. But in answer to Judge Nelson's question, you said, well, what authorizes it? Under Alden, you said the War Powers Act, the War Powers Clause. Yes, you are correct, Your Honor. But I also would note, and perhaps in a modification, Your Honor, that the commonality of the areas where there, I believe, should be a recognized Article I ability to overcome that is the need for uniformity. There may be other powers granted to Congress. Just again, an argument you can make for it. Every act passed by Congress, you know, by definition, you know, national legislation, it's passed because you need uniformity. But it doesn't all, you know, all national legislation doesn't do it. We have legions of cases that say it's otherwise. Moving to the second area of argument quickly, and that is the individual, whether or not individuals should be sued. I would note first that in preparation for the oral argument, I'll look at, again, another authority. Another district court has looked exactly at this issue and decided that the individuals could be sued despite the 11th Amendment bar that that court perceived against suing the state, and that would be Risner v. Ohio Department of Rehabilitation and Correction, 2008, Westlaw 2120542. The heart of this issue that the state raises is the notion of this joinder of one employer. And I think what is clear here is when you look at the definition of employer within the statute, it is designed to be expansive, not restrictive, and so there is nothing inconsistent with the statutory framework in having more than one potential class of employer who could be sued. Subject to your questions, I will reserve the remaining time for rebuttal. That would be fine. Again, please, the court. I'm William Shendal. I'm the attorney for the University of Alaska. I note the court's interest, the panel's interest, in the 11th Amendment question. I have intended to focus on the jurisdictional matter because that was the grounds on which Judge Burgess had resolved the case, and it's grounds on which this panel can affirm his decision. But if the panel wants to focus on the 11th Amendment... From my perspective, why don't you proceed as you planned? I don't know about the other judges. The parties are in agreement that the context of the 1998 amendments is instructive. The context that seems most instructive to the University is, of course, the Seminole Tribe decision from the Supreme Court in 1996 provided by the congressional drafters as the impetus to the amendments that Congress enacted in 1998. But the amendments that are relevant to the jurisdictional question are not only the insertion of the ability to go to state court for private claims against state entities, but the two other portions of the 1998 amendments. And those are the deletion of the provision for federal jurisdiction for just that kind of claim, and the deletion of the venue provisions from the 1994 Act for exactly the kind of claim that we're talking about here. The idea that Congress in 1998 intended to expressly provide for concurrent jurisdiction doesn't make any sense when one takes into account those two deletions of federal jurisdiction and federal venue for exactly this kind of claim. Why would Congress take away the explicit pointers towards federal court for Mr. Thompson's case? And why would that lead to the conclusion that there's concurrent jurisdiction? That simply doesn't make any kind of sense. Well, what about the use of the permissive may? Opposing counsel was arguing, as I understood his argument, that express reference to state court jurisdiction implies concurrent jurisdiction. He, in effect, is saying that giving state court jurisdiction means that federal jurisdiction also exists. What is your response? That argument was presented to this court in Murphy v. Lanier, on which case Your Honor, Judge Nelson sat. I'm glad you remembered. And the court rejected that and said the express provision in other portions of the same Act for federal jurisdiction for some of the claims and the reference in the remainder of the Act for may jurisdiction in state courts meant that the state court jurisdiction was exclusive. And there has been nothing from this court that has suggested that the holding in Murphy v. Lanier has been weakened at all by subsequent opinions. Thank you. The reading that we suggest for may, which is that it gives the plaintiff a range of places that the plaintiff can go to. The plaintiff, for instance, can file a complaint with the Department of Labor. The plaintiff can ask the Attorney General to represent him or her in court. Or the plaintiff can go to state court. That reading of may was also endorsed by the Ninth Circuit in the United Airlines case from 2007. So there are all sorts of readings of may that still give it the permissive or the discretionary character that I believe is appropriate, but at the same time take into account the deletion of the jurisdictional and venue portions of the 1994 statute and to the conclusion that the place, the jurisdictional place, the court place for Mr. Townsend's claim is in state court. Our counsel raised a question in his brief, in any event, about the status of service personnel being denied a remedy in federal court when they have given their services to the country and the like and raises the specter of disuniformity of outcome and the like. But I note that Clause 1 specifically grants the United States the authority to sue presumably on behalf of service personnel if the United States, in its judgment, believes that there is a need for corrective action with respect to a state. Does the United States actually exercise that in your experience in Alaska? I'm not aware of any suits brought by the U.S. Attorney General in Alaska for AP serif claims. I have seen them elsewhere, but I don't know the number of them or how frequently that happens. But that certainly is one of three alternative places that Mr. Townsend could have gone. I don't know if he could have gone to the Department of Labor or he could have filed in state court. And the idea that state court justice is somehow less worthy than federal court justice is, I'm pretty sure, not one that the court would want to endorse. That was not my implication. As to the claim against the individual defendants, the text of USERA in its jurisdictional portion, 43.3b, lays out what appears to be a comprehensive list of what the kinds of actions are. And it identifies three kinds of actions. There's the action by the Attorney General, there's the action by a private person against a private employer, and there is an action by a private person against a state employer. There is no identification, no suggestion that there is a fourth category of claim, or fourth, fifth, or sixth category of claims, which would be a private action against the individual representatives of one of those kinds of employers. That implicitly suggests that there is no such right of action. But in any case, it certainly suggests more strongly, perhaps, that there's no federal court jurisdiction for that kind of claim, if, in fact, there is a right of action against a supervisor. And it would seem to be impractical, and one is reluctant to assume that Congress wanted an impractical solution, to believe that the action against the state employer could be in state court, but the action against the state supervisor could proceed in federal court. That doesn't make much practical sense. With regard to the immunity question, there's no evidence that has been cited, and there's none that I'm aware of, that part of the constitutional design reflected any belief that the states were hostile to veterans. And that seems to be the prerequisite for application of the Alter Rule. Second of all, we have congressional testimony in the form of the Veterans of Harris House Committee, or Committee of the House, in which the House stated, state employers regularly afford persons serving in the armed forces in selective reserve the rights guaranteed by these laws, referring to USERRA. So not only don't we have a record of state hostility, we have a congressional endorsement of state solicitude toward veterans who are trying to exercise their USERRA kinds of rights. So we see no basis at all for congressional power to abrogate state immunity in this context. Thank you. Thank you. Thank you. With regard to this work and our opinion on the meeting in May, I would respectfully refer the Court to the Supreme Court's opinion in Brewer, and I would like to also direct the Court's attention to a specific portion of that opinion. It's at the end of the split opinion section, A. It's at 538 U.S., pages 696, hearing order 697. The Supreme Court gives some very specific examples of when Congress has given a sufficient negative signal against something to clearly indicate that it has denied jurisdiction, and none of those are met here. And my final point would be that several courts now, Paul Montier, when it was only an Eleventh Amendment issue, the McIntosh Court, McIntosh v. Parker, and the Rissner Court have found no problem in allowing an illegal claim to go forward. Thank you. Appreciate the arguments. Case argued as submitted. For the record, the next two cases on the calendar, Suzuki v. Astru and Mahle v. Municipality of Anchorage have been submitted on the briefs. That will bring us then to Sam v. Astru. Thank you.
judges: Nelson, Tashima, Fisher